*Inhabts. of* Thomaston *vs. Inhabts. of* Vinalhaven.

Where territory, before unincorporated, was with the inhabitants thereof incorporated into a town, prior to the *Massachusetts* settlement act of 1793; an alien, residing thereon at the time, did not thereby gain a settlement in such town.

Exceptions from the Court of Common Pleas.

This was an action of *assumpsit* for supplies furnished one *Eunice Lindsey* and her child, alleged to be paupers, and to have their legal settlement in *Vinalhaven.* *Eunice Lindsey* was the daughter of *James* and *Huldah Lindsey.* *Huldah Cooper,* the mother of *Eunice,* was born and lived on one of the *Fox Islands* in *Penobscot Bay,* and without the limits of any incorporated town until the year 1788, when she was lawfully married to *James Lindsey,* the father of the pauper. *James Lindsey* was an Irish seaman, and came to *Castine,* in 1785, from an English ship, having served with the *British* in the war against the *Colonies*; and lived with his wife on the territory now *Vinalhaven,* at the time of its incorporation into a town, *June* 25, 1789. *Lindsey* was a poor man and resided in *Vinalhaven* until 1809, when he removed to unincorporated land, and there died in 1818. Neither the said *Huldah,* nor *Eunice,* the pauper, ever gained a settlement in their own right.

By said act of incorporation, the territory, now *Vinalhaven,* " with the inhabitants thereof" became a town.

The plaintiffs contended, that said *James Lindsey,* though he was not a citizen of *Massachusetts* at the time, by the act incorporating *Vinalhaven,* with his wife, gained a settlement in that town, it being prior to the settlement act of 1793. *Smith J.* before whom the action was tried, being of opinion, that *James Lindsey,* and consequently his wife and child, did not acquire a legal settlement in *Vinalhaven* by virtue of said act of incorporation, by consent of parties, directed a nonsuit with leave to file exceptions. The exceptions were filed.

*F. Allen* and *Cilley,* for the plaintiffs, relied on the act incorporating *Vinalhaven,* as a town, *June* 25, 1789, as giving a settlement to the father of the pauper. As she has gained none in her own right, she retains that derived from her father in *Vinalhaven.* Before the passing of the *Massachusetts* settlement act of 1793, an alien acquired a settlement by living on the territory incorporated into a town, as well as a citizen. The act is itself sufficiently broad to include aliens, as well as citizens of the State. The expression is, " with the inhabitants thereof." The cases *Buckfield* v. *Gorham,* 6 *Mass. R.* 445 ; and *Bath* v. *Bowdoin,* 4 *Mass. R.* 452, are directly in point in our favor.

*Foote* and *C. R. Porter,* for the defendants, contended, that *James Lindsey,* being a foreigner, was not included by the term " inhabitants" used in the act of incorporation. Inhabitants has a technical meaning equivalent to citizens, and excludes aliens. 2 *Kent's Com.* 54, 55.

The settlement statute of 1789, passed two days before the incorporation of *Vinalhaven,* takes away the foundation of the decisions in the cases *Buckfield* v. *Gorham,* and *Bath* v. *Bowdoin.* By this act, as well as by the act of 1793, aliens do not gain a settlement by residing on a plantation, when it was made into a town. That an alien gained no settlement by residing on land incorporated into a town was determined in *Jefferson* v. *Litchfield,* 1 *Greenl.* 196. Nor can the wife gain a settlement, unless the husband does. *Ibid.* The only difference between the acts of 1789 and 1793, in this respect, is, that in the former

the word "inhabitant" is used, and in the latter, the word "citizen ;" and they both have the same meaning.

After a continuance for advisement, the opinion of the Court was drawn up by

Weston C. J. — It has been laid down by the Supreme Judicial Court in *Massachusetts*, referring to cases prior to 1793, in *Bath* v. *Bowdoin*, and in *Buckfield* v. *Gorham*, cited for the plaintiffs, that upon the incorporation of a place before unincorporated into a town, all the inhabitants thereof had thereby their settlement fixed in such new town. But in neither of these cases was that the point decided, whether the attention of the court was called to the fact, that no statute to this effect existed prior to that of 1793, *ch.* 34, does not appear. As the settlement of paupers depends upon the express provision of law, it might deserve very serious consideration, whether a mode of settlement so sweeping in its effect should be established by construction. By the statute before cited, it was provided by law, that all persons, citizens of the *United States*, dwelling and having their homes in any unincorporated place, at the time when the same shall be incorporated into a town, shall thereby gain a settlement therein.

As no such provision existed in any former statute, this would seem to be the appointment of a new mode of gaining a settlement ; and when it is considered that the liability of towns for the support of paupers, has been held to be matter of strict law, we are not satisfied, notwithstanding the intimation in the cases cited, that it existed before by construction. If it did, the statute of 1793 indicated the sense of the legislature, that it should be limited to citizens. But admitting the correctness of the construction contended for, what effect did the incorporation of the territory, now constituting *Vinalhaven*, "with the inhabitants thereof" into a town, have upon *James Lindsey*, an alien, then resident there? Upon the incorporation, the inhabitants who were parties to it, acquired certain constitutional and municipal powers. If they then had, or whenever they might have, the requisite number of rateable polls, they had a right to send a representative to the general court. They had a right to vote also in the

election of Governor and Senators. In these privileges, an alien could not participate. Nor could the character of a citizen be conferred upon him, by the act of a state; the regulation of that subject having been assigned to the general government.

A State might undoubtedly impose upon towns the support of aliens; but the question is, whether *Lindsey* was so far one of the inhabitants, upon whom the corporate powers or franchise was bestowed, as that there did thence result an obligation on the part of the town, to support him, if he stood in need of relief, or relief might at any time become necessary for his wife or children. We cannot say that it appears to us, that this charge or obligation was imposed, or is deducible from the act of incorporation. We think we ought to require clearer evidence of its existence, than is there discoverable. It does not appear to our satisfaction, that *Lindsey* acquired a settlement in *Vinalhaven*. Nor are we aware, that any such construction of the law formerly obtained as to aliens. Prior to our separation, they were generally supported, when they became chargeable, by the State. And if the husband gained no settlement in *Vinalhaven*, the wife did not. *Jefferson* v. *Litchfield*, 1 *Greenl.* 196. It results that the pauper could have no derivative settlement in that town. And the opinion of the court is, that the decision of the Judge in the court below to this effect, is legally sustained.

*Exceptions overruled.*